G. Kevin Kiely, OSB No. 833950
gkkiely@cablehuston.com
Carla Scott, OSB No. 054725
cscott@cablehuston.com
CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP
1001 SW Fifth Avenue, Suite 2000
Portland, OR 97204-1136
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

FILED '10 APR 15 16:14 USDC-ORP

Of Attorneys for Plaintiff Soothing Touch, LLC and Sat Kartar S. Bird


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SOOTHING TOUCH, LLC, a New Mexico Limited Liability Company; and SAT KARTAR S. BIRD, a New Mexico Resident, | CV'10 - 421 Civil No. BR |
| Plaintiffs, | COMPLAINT |
| v. | Breach of Contract; Fraud; Declaratory Judgment |
| GOLDEN TEMPLE OF OREGON, LLC, an Oregon Limited Liability Company, and KARAM SINGH KHALSA, an Oregon Resident, | Amount in Controversy Exceeds $75,000 |
| Defendants. | DEMAND FOR JURY TRIAL |

**PARTIES, JURISDICTION AND VENUE**

1.

Plaintiff Soothing Touch, LLC ("Soothing Touch"), is a New Mexico limited liability company with its principal place of business in New Mexico.

Page 1 – COMPLAINT

#328667

ORIGINAL

2.

Plaintiff Sat Kartar S. Bird is a resident of New Mexico and is the managing member of Soothing Touch.

3.

Defendant Golden Temple of Oregon, LLC ("Golden Temple"), is an Oregon limited liability company with its principal place of business in Oregon.

4.

Defendant Karam Singh Khalsa ("Karam Khalsa") is a resident of Eugene, Oregon.

5.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) (diversity) and 28 U.S.C. § 2201 (declaratory relief).

6.

Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## FACTS COMMON TO ALL CLAIMS

7.

This case involves disputes arising out of two contracts: (1) an Asset Purchase Agreement executed on November 6, 2006 between Golden Temple of Oregon, Inc., as "Seller" and Soothing Touch, LLC as "Buyer"; and (2) a subsequent Equipment Purchase Agreement executed between the same parties on February 8, 2007. Golden Temple of Oregon, Inc., subsequently became Golden Temple of Oregon, LLC.

8.

Sat Kartar negotiated the contracts on behalf of Soothing Touch, and Karam Khalsa negotiated them on behalf of Golden Temple.

///

///

## THE ASSET PURCHASE AGREEMENT

9.

The Asset Purchase Agreement provided for the sale of the portion of Golden Temple's Health and Beauty Aid ("HABA") division known as its "Soothing Touch" business. Golden Temple's HABA Division also included two other business lines: a line called "Sunshine Spa" that was sold separately to a different purchaser; and a line called "Private Label" that Golden Temple did not sell.

10.

Soothing Touch manufactures and sells health and beauty aid product lines, including oils, lotions, creams, shampoos, muds and scrubs marketed under the label "Soothing Touch." The assets Golden Temple promised by way of the Asset Purchase Agreement included, among other things, inventories, raw materials, formulas, packaging, labels, trademarks, and "Additional Finished Goods" to be provided and invoiced at a prescribed additional cost upon request from Soothing Touch.

11.

In exchange for these assets, Soothing Touch promised to pay Golden Temple $1,300,000: $400,000 cash at closing, together with a Promissory Note in the amount of $900,000.

12.

The Promissory Note provides for monthly payments in the amount of $10,041.80 from February 1, 2007 to January 31, 2008, with adjustments thereafter based on an amortization schedule.

13.

Sat Kartar signed a personal guaranty on the Promissory Note.

14.

The parties negotiated the purchase price based upon the net profits earned by the

Page 3 – COMPLAINT

Soothing Touch business in 2006, as represented in Golden Temple's prospectus (the "Prospectus"). The parties agreed to use a multiplier of 4.67 applied to the net profit of $278,328 for Soothing Touch in 2006, as listed in the Prospectus, to arrive at the purchase price of $1,300,000.

15.

Soothing Touch is current on the payments owed pursuant to the Promissory Note and has complied with all of its other obligations under the Promissory Note.

16.

In contrast, Golden Temple has failed to comply with several of its contractual obligations under the Asset Purchase Agreement, as summarized without limitation below.

17.

After closing on the Asset Purchase Agreement, Golden Temple failed to make a reasonable good faith effort to deliver the Additional Finished Goods required by Section 4.3 of that contract. As a result, Soothing Touch was forced to contract with an outside supplier to manufacture those goods at a higher cost in an attempt to meet customer demand. Despite this attempt to mitigate Golden Temple's breach, Soothing Touch was unable to meet customer demand and numerous customers canceled their orders. As a result, Soothing Touch suffered a loss of both revenues and substantial goodwill.

18.

Golden Temple's delivery of raw materials fell well below the quantity and quality required by the Asset Purchase Agreement. Indeed, a large percentage of the delivered raw materials were spoiled and many had expired *years* before closing on the Asset Purchase Agreement. In addition, three formulas for muds included in the assets listed in the Prospectus as already created and tested did not exist and were not provided as required. Soothing Touch incurred significant expense to acquire the raw materials Golden Temple failed to deliver and to create and test the mud formulas that were not provided.

Page 4 – COMPLAINT

19.

Golden Temple shipped to Soothing Touch a large number of goods and material that were unrelated to the Soothing Touch business, and billed Soothing Touch for these unwanted and uncontracted-for goods. Soothing Touch incurred significant costs to unload, handle, store and ultimately dispose of these items.

20.

Golden Temple also failed to deliver finished label artwork as required by the Asset Purchase Agreement. Soothing Touch was forced to recreate all labels from scratch, which took nearly a year to complete.

21.

Section 14.13 of the Asset Purchase Agreement provides that the prevailing party in any litigation arising out of that contract shall be entitled to recover its reasonable attorney fees and costs.

## THE EQUIPMENT PURCHASE AGREEMENT

22.

The above-described failures of Golden Temple to provide, among other things, raw materials, formulas, Additional Finished Goods, and labels had a devastating ripple effect on Soothing Touch and forced Soothing Touch to engage in several undesired moves in order to mitigate its damages.

23.

Among other mitigation efforts, Soothing Touch entered into the Equipment Purchase Agreement with Golden Temple to acquire equipment needed to manufacture and package the Soothing Touch products that Golden Temple failed to provide.

24.

The Equipment Purchase Agreement provided for the sale of certain manufacturing and labeling equipment in exchange for $114,000, payable within 120 business days of shipment.

Paragraph 4 of this contract required Golden Temple to provide technical support with respect to the equipment.

25.

The equipment Golden Temple ultimately delivered, however, only caused Soothing Touch more problems. For example, Soothing Touch had asked to buy only the equipment needed to produce the Soothing Touch products. But Golden Temple shipped it items that had never been used to manufacture those products. It became apparent after discussions with former Golden Temple employees that these items were delivered so that Golden Temple could avoid disposing of them.

26.

In addition, when the equipment arrived, almost all the power cords had to be replaced. Golden Temple had literally cut the equipment out of their resting spots at Golden Temple, as opposed to simply unplugging the equipment before shipping it. Most of the delivered equipment had broken parts and at least one machine was missing key components.

27.

When Soothing Touch asked for technical support for the equipment, as required by the Equipment Purchase Agreement, Golden Temple responded that it would charge for the trip from Oregon to New Mexico plus $3,600 per day for the operator's time.

28.

Because the equipment was so damaged, Soothing Touch was forced to dispose of much of it and purchase and install replacement equipment. Soothing Touch incurred approximately $100,000 in costs to do so.

## DAMAGES SUSTAINED FROM BREACH OF CONTRACTS

29.

The above-described material breaches of the two contracts have directly damaged Soothing Touch as follows:

Page 6 – COMPLAINT

A.    Costs to purchase raw goods, create and test formulas in the approximate amount of at least $188,000;

B.    Loss of sales, customers and goodwill because of inability to fill orders in a timely fashion, in an amount to be proven trial;

C.    Costs in the approximate amount of $13,000 for handling, storing and disposing of materials unrelated to the Soothing Touch business improperly shipped by Golden Temple;

D.    Costs related to problems with the equipment in an amount of at least $100,000.

## FALSE STATEMENTS
## REGARDING NET PROFITS AND LABOR

30.

Golden Temple and Karam Khalsa made several materially false statements in the Prospectus and during the due diligence process that inflated the ultimate purchase price of the Soothing Touch business.

31.

For example, the Prospectus stated that only 11 employees were required to run the *entire* HABA Division (of which Soothing Touch was only one part—in fact, Soothing Touch products accounted for approximately only 40% of sales from the HABA Division).

32.

In addition, during the due diligence process, Sat Kartar repeatedly asked Karam Khalsa if the Prospectus correctly stated that only 11 employees were required to run the entire HABA Division, and Karam Khalsa consistently told him that this was correct when he knew it was false. Karam Khalsa held himself out as the Golden Temple representative from whom Soothing Touch should obtain the information needed to conduct his due diligence.

33.

When production efforts began in earnest by Soothing Touch in July of 2007, Soothing

Touch discovered that the Prospectus and information provided during due diligence was inaccurate regarding number of employees needed to run the Soothing Touch business. Former Golden Temple employees who subsequently began working for Soothing Touch informed Sat Kartar that, in fact between 30-45 employees, if not more, were required to run the business. These former Golden Temple employees were shocked to find Soothing Touch attempting to run the business with far fewer employees.

34.

Further, financial reports that Soothing Touch was able to obtain recently (which were not provided to him as part of the due diligence process) further show that the numbers in the Prospectus are false. For example, a Golden Temple yearly financial statement for 2006 indicates that the Prospectus overstated the contribution margin for the Soothing Touch business in 2006 by at least $54,163—because the gross sales number is inflated, the gross margin is higher, and the selling expenses are lower in the Prospectus than in the yearly financial report.

35.

Sat Kartar asked repeatedly to view financial reports for the Soothing Touch business during the due diligence process. Despite these requests, Golden Temple did not provide him with such reports and instead advised him that no such reports existed.

36.

Also contrary to the information in the Prospectus regarding the Soothing Touch business, Soothing Touch has learned by interviewing former Golden Temple employees that net profitability had *declined* significantly from 2005 to 2006 because of increased costs, and that Golden Temple expected that 2008 net profits would decline even further. The Prospectus, however, claims quite the opposite—that net profits for Soothing Touch had substantially *increased* from those in 2005:

/ / /

/ / /

/ / /

Page 8 – COMPLAINT

| NET PROFITS FOR SOOTHING TOUCH AS REFLECTED IN THE PROSPECTUS | |
|---|---|
| 2005 | $ 59,207 |
| 2006 | $278,327 |
| 2007 | $470,261 (projected) |

37.

As a result of the foregoing facts, the net profit figure of $278,328 for 2006 in the Prospectus was substantially inflated.

38.

On information and belief, Soothing Touch's net profits for 2006 were in fact more in the neighborhood of $50,000 (and perhaps even less), nowhere near the $278,328 listed in the Prospectus. Assuming that net profits for 2006 were $50,000, applying the multiplier the parties agreed to of 4.67 would result in a purchase price of $233,500, which is over $1,000,000 less than the actual purchase price in the Asset Purchase Agreement.

**FALSE STATEMENTS REGARDING EXISTING FORMULAS**

39.

Finally, the Prospectus also stated that the Soothing Touch business included assets (e.g., created and tested mud formulas) that did not in fact exist and were not provided as part of the sale.

**FIRST CLAIM FOR RELIEF**

**Breach of Contract**

(Against Golden Temple—Count 1)

40.

Soothing Touch realleges and incorporates by reference the allegations in paragraphs 1—39 above.

41.

As a direct result of Golden Temple's above-described material breaches of the Asset

Purchase Agreement, Soothing Touch has sustained at least $201,000 in damages.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

(Against Golden Temple—Count 2)

42.

Soothing Touch realleges and incorporates by reference the allegations in paragraphs 1—41 above.

43.

As a direct result of Golden Temple's above-described material breaches of the Equipment Purchase Agreement, Soothing Touch has sustained at least $100,000 in damages.

## THIRD CLAIM FOR RELIEF

### Fraud

(Against Golden Temple and Karam Khalsa)

44.

Soothing Touch realleges and incorporates by reference the allegations in paragraphs 1—43 above.

45.

Golden Temple and Karam Khalsa knowingly made materially false representations to Soothing Touch and Sat Kartar—including but not limited to the following: (1) only 11 employees were necessary to produce all business lines in Golden Temple's HABA Division; (2) the Prospectus overstated the contribution margin for the Soothing Touch business in 2006 by at least $54,163; and (3) the net profits for the Soothing Touch business for 2006 were $278,328 when in fact the net profits were substantially less.

46.

Golden Temple and Karam Khalsa intended that Soothing Touch and Sat Kartar rely on these false representations in deciding to purchase the Soothing Touch division of Golden

Temple and in executing a personal guaranty on the Promissory Note.

47.

Despite best efforts during due diligence, Soothing Touch and Sat Kartar were unable to learn the truth, and they reasonably relied on defendants' false representations. Indeed, Golden Temple and Karam Khalsa withheld material documents from Sat Kartar during due diligence and Karam Khalsa repeatedly answered Sat Kartar's questions by telling him that the Prospectus was correct.

48.

Because the 2006 net profit figure listed in the Prospectus for the Soothing Touch business was used to calculate the ultimate purchase price, Soothing Touch is entitled to a reduction of the purchase price and a corresponding adjustment to the Promissory Note.

49.

As a direct and approximate result of defendants' fraud, Soothing Touch and Sat Kartar have been damaged because they contracted to pay $1,300,000 for a business that was only worth—at best—$233,500. To date, Soothing Touch has paid Golden Temple approximately $807,846 pursuant to the Asset Purchase Agreement, and there remains ongoing obligations under the Promissory Note until the $1,300,000 is paid in full. To redress the fraud, Soothing Touch is entitled to: (1) receive $574,346 in money damages; and (2) be relieved from any future obligations under the Promissory Note. Sat Kartar is likewise entitled to be relieved from his obligations under his personal guaranty of the Promissory Note.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

(Against Golden Temple)

50.

Plaintiff realleges and incorporates by reference paragraphs 1 – 49 of this Complaint.

/ / /

Page 11 – COMPLAINT

51.

Golden Temple's above-described material breaches of the Asset Purchase Agreement and Equipment Purchase Agreement, and the fraud related to the Asset Purchase Agreement, present an actual controversy under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

52.

Plaintiff is entitled to a declaratory judgment that: (1) Golden Temple's conduct excuses Soothing Touch from performing any of its obligations under the Asset Purchase Agreement and the Equipment Purchase Agreement; and (2) relieves Sat Kartar from any obligations under his personal guaranty of the Promissory Note.

WHERFORE, plaintiffs request judgment in their favor as follows:

1.      A declaration that Golden Temple's material breaches of the Asset Purchase Agreement and Equipment Purchase Agreement, and fraud related to the Asset Purchase Agreement:  (a) excuse Soothing Touch from performing any of its obligations under those contracts; and (b) relieve Sat Kartar from his personal guaranty of the Promissory Note;

2.      A money judgment to compensate Soothing Touch for damages suffered as a result of Golden Temple's breach of the two contracts and Golden Temple's and Karam Khalsa's fraud in an amount not less than $875,346, to be proven at trial.

3.      Plaintiff's reasonable attorney fees and costs incurred herein pursuant to Section 14.13 of the Asset Purchase Agreement.

4.      Any other relief that the Court deems just.

DATED: April 15, 2010

CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP

By: _____
G. Kevin Kiely, OSB No. 833950
Carla Scott, OSB No. 054725
Of Attorneys for Plaintiff Soothing Touch LLC